UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT CINCINNATI
CIVIL CASE NO: 09-335-SSB-JGW

**LONNIE RARDEN**                                                                                    **PETITIONER**

**V.**

**WARDEN, WARREN CORRECTIONAL**
**INSTITUTION**                                                                                       **RESPONDENT**

**REPORT AND RECOMMENDATION[1] THAT THIS PETITION FOR A WRIT OF
HABEAS CORPUS BE DENIED**

On May 14, 2009 petitioner Lonnie Rarden, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On July 17, 2009 respondent filed a return of the writ, and petitioner filed his reply on July 28, 2009.  Petitioner's motion for a stay was denied by the presiding district judge on January 19, 2011.  Consistent with local practice, the matter has been referred to the undersigned for initial consideration and a report and recommendation pursuant to 28 U.S.C. § 636(b).

**I.  Factual and Procedural Background**

This case has a lengthy underlying procedural history.  In March 2007, a Butler County, Ohio Court of Common Pleas jury found petitioner guilty of retaliation, two counts of complicity to perjury, complicity to tampering with evidence, menacing by stalking, seventeen counts of violating a protective order, and escape. Doc. 7-14, 15.  As summarized by the Twelfth District Court of Appeals, the relevant facts underlying petitioner's convictions are as follows:

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

> Prior to the matter currently before this court, appellant [petitioner] was convicted of menacing by stalking, domestic violence, and inducing panic, which were all related to the same victim in the instant case, Emily Anderson.  As a result of those prior convictions, Anderson obtained a civil protection order against appellant, who then retaliated and enlisted a mutual friend, Christina Hurst, to help him.  Appellant attempted to frame Anderson for aggravated assault, persuaded Hurst to perjure herself in court to obtain a civil protection order against Anderson, and harassed Anderson with threatening phone calls and letters. In addition, appellant orchestrated an attempt to escape with the assistance of Hurst.

Doc. 7-21, p. 1-2.  Petitioner was sentenced to a total of twenty-six and one-half years' imprisonment, after which he appealed.

Petitioner raised four assignments of error in his direct appeal.  First, he argued the trial court violated his right to counsel because it failed to comply with Ohio Rule of Criminal Procedure 44(C).[2]  *See* Doc. 7-19.  Second, he argued the trial court violated his constitutional right to access a law library. *Id.*  Third, he argued the trial court violated his due process right to discovery and access to the courts by failing to order the State to provide him with audio recordings of conversations he had with the victim. *Id.*  Finally, he argued the sentence imposed by the trial court was contrary to law and not supported by clear and convincing evidence. *Id.*

In addition to filing his direct appeal, petitioner filed a pro se motion for modification of verdict pursuant to Ohio Rule of Criminal Procedure 33.  Doc. 7-25.  The trial court denied that motion in May 2007.  Doc. 7-26.  In September 2007, petitioner filed a notice of appeal and motion for leave to file a belated appeal of the denial of his motion for modification of the verdict.  Doc. 7-27-28.  The appellate court denied the motion to file a belated appeal.  Doc. 7-

---

[2]Ohio Rule of Criminal Procedure 44(C) provides that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22.  In addition, in serious offense cases the waiver shall be in writing."

2

29.

In April 2008, the Twelfth District Court of Appeals affirmed, finding the claim regarding access to the law library to be without merit and overruling all of petitioner's other claims. Doc. 7-21. Petitioner appealed to the Supreme Court of Ohio, but in September 2008 that court denied leave to appeal and dismissed petitioner's appeal because it did not involve a "substantial constitutional question." Doc. 7-24.

While his direct appeal was pending, petitioner filed several other motions and appeals. After petitioner filed his direct appeal but before the Twelfth District Court of Appeals issued its ruling, petitioner filed a pro se petition to vacate or set aside sentence in the trial court. Doc. 7-41. The only allegation of error was petitioner's contention that his right to compulsory process was denied when he issued a subpoena for a detective to testify but the trial court dismissed the detective from the courtroom without letting the detective testify. The trial court dismissed the petition because it was not filed within 180 days of the filing of the trial transcripts in petitioner's direct appeal, as required by Ohio law. Doc. 7-43.

Petitioner filed a motion asking the trial court to enter a *nunc pro tunc* order overruling its prior decision to dismiss as untimely his petition to vacate, arguing that his petition was untimely only because prison officials had removed all his legal documents during a search. Doc. 7-44 The trial court denied that motion, Doc 7-45, and petitioner filed a notice of appeal. Doc. 7-46. In June 2008, the Twelfth Circuit Court of Appeals dismissed petitioner's appeal as having been taken from a non-final order. Doc. 7-47.

Meanwhile, having failed to file a timely appeal from the trial court's dismissal of his pro se motion to vacate sentence, petitioner filed a belated notice of appeal and motion for leave to

3

file a belated appeal. Doc. 7-48, 49. The appellate court denied the motion for leave to file a belated appeal and dismissed petitioner's untimely appeal. Doc. 7-50. Petitioner did not seek review by the Ohio Supreme Court.

In May 2009, petitioner signed the 2254 petition at hand. Doc. 1. Respondent does not contest the petition's timeliness. In the return of writ, however, respondent argues that grounds five through seven of petitioner's 2254 petition were procedurally defaulted because petitioner had not raised them on direct appeal or during his state post-conviction proceedings.[3] Doc. 7. Petitioner then filed a motion to stay. In that motion, petitioner asked this Court to hold his 2254 petition in abeyance while he returned to state court to exhaust his state remedies on issues he failed to present to the Ohio state courts. Doc. 10. Respondent opposed the stay. Doc. 11.

In February 2010, Magistrate Judge Hogan issued a report and recommendation (R&R) recommending that petitioner's motion for a stay be denied. Judge Hogan concluded that grounds five and six of petitioner's 2254 petition were procedurally defaulted because petitioner had not raised those grounds in his state petition for post-conviction relief. Doc. 13, p. 4. Judge Hogan then concluded that ground seven of petitioner's 2254 petition was procedurally defaulted because petitioner failed to raise it in the state courts at the first opportunity. *Id.* at p. 4-5.

Instead of immediately filing objections to Judge Hogan's R&R, petitioner filed a motion to strike respondent's response in opposition to petitioner's previously-filed motion for a stay. Doc. 17. Petitioner then filed objections to Judge Hogan's R&R. Doc. 19. While his objections to the R&R were pending, petitioner filed a notice of resentencing, indicating that he did not

---

[3]Ground five alleges the trial court improperly engaged in plea negotiations. Ground six alleges the victim's boyfriend improperly communicated with witnesses during petitioner's trial. Ground seven alleges the trial court erred by failing to instruct on a lesser-included offense.

4

know what effect his resentencing had on his pending 2254 petition.  Doc. 20.  Respondent filed a response stating that petitioner was resentenced only on the issue of postrelease control and, thus, the resentencing had no effect on the 2254 petition.  Doc. 21.  Petitioner then filed a motion to overrule respondent's response.  Doc. 22.  No action was taken for several months, other than the case being reassigned from Judge Hogan to me.  Doc. 23.

After the case was reassigned to me, I issued an order denying petitioner's motion to strike respondent's response to petitioner's motion for a stay and overruling petitioner's motion to overrule respondent's response to petitioner's notice of resentencing.  Doc. 23.  My order also stated that the record should be resubmitted to the presiding district judge for adoption or rejection of Judge Hogan's R&R.  *Id.*  In January 2011, the presiding district judge overruled petitioner's objections, adopted Judge Hogan's R&R, and denied petitioner's request for a stay.  Doc. 25.  Petitioner's 2254 petition is thus ripe for adjudication.

**II. Analysis**

**A. Standard of Review**

The standard of review of a 2254 petition depends upon whether the claim was adjudicated on the merits in state court.  If the claim was adjudicated on the merits, a court should grant a habeas petition only if:

> the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts.

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003).

A different standard applies to claims which were not adjudicated on the merits by state courts, however (i.e., procedurally defaulted claims):

5

> When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review. A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case.

*Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (internal citations omitted). A claim is procedurally defaulted if a habeas petitioner has "failed to comply with a state procedural rule that is applicable to the petitioner's claim" and "the state courts actually enforced the procedural rule in the petitioner's case; and . . . the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis*, 351 F.3d at 744.

Some of petitioner's claims have been procedurally defaulted but others have not. Thus, the standard of review will be different for the procedurally defaulted claims. *See, e.g., Seymour*, 224 F.3d at 555-56 (reviewing non-procedurally defaulted claims on their merits while applying procedural default rules to defaulted claims).

### B. Claim One: Alleged Denial of Right to Counsel

Petitioner's first claim is that the trial court violated his right to counsel. According to petitioner, the trial court failed to obtain a written waiver before permitting petitioner to proceed pro se, did not make sure that petitioner was "mentally stable enough to represent himself in such a complexed [sic] trial" and did not "examine the maximum range of punishment" with petitioner. Doc. 1, p.11.

#### 1. Written Waiver

Ohio Rule of Criminal Procedure 44(C) requires a waiver of counsel to be made in

writing in "serious offense cases . . . ."[4] Under federal constitutional law, the right to counsel and the right to self-representation are fundamental rights. *Nickleson v. Welch*, 2010 WL 5582881, at *6 (N.D. Ohio Oct. 14, 2010) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Faretta v. California*, 422 U.S. 806 (1975)). Thus, the Sixth Amendment "requires any waiver of the right to counsel to be knowing, voluntary, and intelligent." *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)). But federal law does not mandate that a waiver of counsel be made in writing. Thus, any failure to obtain a written waiver is not cognizable in this federal habeas proceeding as it would be a violation of Ohio state law, not federal law.

Violations of state law generally are not cognizable in federal habeas proceedings. *See, e.g., Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998). Instead, a violation of state law is only cognizable in federal habeas proceedings "if such error amounts to a fundamental miscarriage of justice or a violation of the right to due process guaranteed by the United States Constitution . . . ." *Smith v. Ohio, Dept. of Rehabilitation and Correction*, 331 F.Supp.2d 605, 622 n. 16 (N.D. Ohio 2004). Failure to obtain a written waiver of counsel does not rise to that level. *See Nickleson*, 2010 WL 5582881 at *8, n.7 (agreeing with federal habeas petitioner's concession that failure to obtain written waiver of counsel as required by Ohio Criminal Rule 44 was not cognizable in a federal habeas petition). On federal habeas review, the question is whether petitioner's waiver of counsel was knowing, voluntary and intelligent, not whether the waiver was memorialized in written form.

### 2. Competency to Waive Counsel

---

[4]Respondent does not argue that petitioner's state charges did not constitute serious offense. Thus, I will assume that the charges were serious offenses for federal habeas review purposes.

7

Petitioner next contends that the trial court erred by failing to ensure that he was "mentally stable enough" to waive his right to counsel. I construe this vague argument as being an argument that the trial court failed to ensure that petitioner was competent to waive his right to counsel.

It is possible for a defendant to be competent to plead guilty or stand trial, yet be incompetent to represent himself (i.e., waive his right to counsel). *United States v. Carradine*, 621 F.3d 575, 578 (6th Cir. 2010) (citing *Indiana v. Edwards*, 554 U.S. 164 (2008)). Thus, there is a potential "gray area between competency to stand trial and competency to self-represent." *United States v. Back*, 307 Fed.Appx. 876, 878 (6th Cir. 2008). So a court faced with a defendant who desires to waive his right to counsel and represent himself should make a two-pronged inquiry. First, the court should make sure the defendant is competent to stand trial and, second, should make sure that the defendant is competent to represent himself.

A defendant is competent to stand trial if he "has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and had 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). Before a defendant should be permitted to waive his right to counsel and proceed pro se, the defendant must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Swiger v. Brown*, 86 Fed.Appx. 877, 880 (6th Cir. 2004) (quoting *Faretta*, 422 U.S. at 835) (quotation marks omitted). Whether a defendant's eyes were sufficiently open when he chose to waive counsel is a fact-dependent inquiry, dependent upon a defendant's background, experience and conduct. *Id.* (citing *Zerbst*,

304 U.S. at 464).

In his direct appeal, the Twelfth Circuit Court of Appeals expressly held that petitioner's "waiver of his right to counsel was knowing, intellgent, and voluntary." Doc. 7-21, p.2. That appellate court accurately noted that the trial court:

> repeatedly advised appellant to proceed with an attorney, advised him of his constitutional right to an attorney, described possible negative effects of proceeding pro se, informed appellant the he would be held to the same rules of evidence and procedure as an attorney, questioned appellant about prior self-representation and any educational background that would provide appropriate training to handle legal matters, inquired as to appellant's familiarity with the criminal rules of procedure and rules of evidence, cautioned appellant about the perils of questioning witnesses without fully understanding the rules of evidence, informed appellant that he was giving up his right to later claim ineffective assistance of counsel, inquired as to whether appellant was aware of the charges against him and all of the maximum penalties, stated that the penalties are significant and that the court is bound by the guidelines established by the Revised Code and common law, recommended that appellant allow counsel to represent him, and made sure appellant had no other questions.

*Id.* at p. 2-3. *See also* Doc. 12-1, p. 3-15.

Moreover, the trial court issued an order expressly finding that petitioner was competent to stand trial, a decision based upon the report of Dr. Robert Kurzhals.[5] *See* Doc. 7-7. Petitioner cites to nothing in the record showing that the trial court erred by finding him competent to stand trial. The state trial judge engaged in a lengthy colloquy with petitioner before permitting petitioner to proceed pro se, and the state appellate court examined that colloquy and found it to be adequate. Petitioner has cited to nothing in the record or to any binding authority which shows that "the state court's interpretation was objectively unreasonable as measured by

---

[5]Petitioner argues in passing that he was entitled to be examined by two doctors once his competency was questioned. Doc. 1, p. 11. But petitioner cites to no federal authority requiring two evaluations before a defendant's competency can be determined.

decisions of the United States Supreme Court . . . ." *Swiger*, 86 Fed.Appx. at 879. Indeed, the trial court's colloquy with petitioner was sufficient for the trial court to ascertain both that petitioner was competent to stand trial and to represent himself (i.e., his decision was made with sufficiently opened eyes).

Accordingly, the record shows that the Twelfth District Court of Appeals correctly concluded that the trial court took sufficient precautions to ensure that petitioner was both competent to stand trial and to proceed pro se, especially considering petitioner's history of interactions with the criminal justice system. *See* Doc. 7-65-69 (containing petitioner's criminal history). Petitioner should not be afforded habeas relief.

### 3. Maximum range of punishment

At the hearing on whether petitioner would be permitted to proceed pro se, the following exchange occurred:

> THE COURT: Do you know how many years the Court could give you if it chose to give you the maximum?
> THE DEFENDANT: Yes, sir.
> THE COURT: How many?
> THE DEFENDANT: Twenty-five.
> THE COURT: Mr. Brewer, is that accurate?
> MR. BREWER [Petitioner's attorney]: I believe so, Judge.
> THE DEFENDANT: That's my understanding I'm going to get that any way if I'm found guilty.
> THE COURT: Well, --
> THE DEFENDANT: If I'm going to go down, I'm going to take myself down.
> THE COURT: Well, I think that is a little bit unfair because this Court has not made any determination of any punishment in this case. And I've never even thought about it nor have I discussed the issue of sentencing with your attorney, with the prosecuting attorney or you in this particular case. Do you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: I think while we're on the subject of sentencing, this Court must follow the guidelines which are established by the Ohio Revised Code and by court law. Do you understand that?

      THE DEFENDANT: Yes, sir.

Doc. 12-1, p. 12-13. Petitioner was ultimately sentenced to twenty-six and one-half years' imprisonment. Petitioner now tersely argues that the trial court "did not examine the maximum range of punishment that the petitioner was facing as well." Doc 1, p. 11.

      Obviously, petitioner's contention that the trial court failed to discuss the maximum permissible punishment is erroneous. Unfortunately, the discussion of the potential maximum punishment was itself erroneous since petitioner was sentenced to a longer term of imprisonment than the twenty-five year maximum discussed at the hearing. But, as respondent notes, petitioner raised no contemporaneous objection when he was sentenced. And the Twelfth District Court of Appeals refused to grant petitioner relief on direct appeal, holding that:

> any error in regard to the court notifying appellant of his exact maximum sentence was invited error, as the court questioned appellant if he was aware of the maximum penalties and inquired as to the nature of the penalties, to which appellant replied that he was aware of the maximum sentence and that he could face up to 25 years in prison, with which his standby counsel agreed. See *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-0hio-4849, ¶27; *State v. Willams*, Butler App. No. CA2006-03-067, 2007-0hio-2699, ¶27. Appellant also reassured the court he was aware of the significance of the maximum penalties and stated, "If I'm going to go down, I'm going to take myself down."

Doc. 7-21, p.3.

      It is unfortunate that petitioner was not informed accurately of the proper maximum punishment to which he was subjected. But claims of error involving improper application of state sentencing laws are generally not cognizable on federal habeas review. *See, e.g., Galloway v. Howes*, 77 Fed.Appx. 304, 305 (6th Cir. 2003) ("To the extent that Galloway contends that his sentence violates state law, the argument does not give rise to a cognizable claim for federal habeas corpus relief."). In the case at hand, there is not even an alleged substantive error in the

11

sentence itself–merely a terse allegation that petitioner was told the wrong maximum sentence at the hearing. But the transcript reveals that petitioner himself volunteered that his maximum sentence would be twenty-five years. Though the trial court ideally should have corrected petitioner's error, Petitioner does not specifically argue that he would have proceeded with counsel if he had been informed that he could received twenty-six and one-half years' imprisonment instead of twenty-five years' imprisonment. Thus, the state court's refusal to afford petitioner relief based upon the erroneous maximum sentence information is not "objectively unreasonable as measured by decisions of the United States Supreme Court . . . ." *Swiger*, 86 Fed.Appx. at 879.

### C. Claim Two: Denial of Access to a Law Library

Petitioner claims that he is entitled to habeas relief because he was unable to access a law library to prepare for trial. On direct appeal, the Twelfth District Court of Appeals denied relief, holding that petitioner could not:

> forego counsel and then demand access to law library facilities, because when appellant knowingly, intelligently, and willingly waived his right to legal representation, he willingly gave up many of the benefits associated with the right to counsel. *See State ex rel. Greene* (1992), 63 Ohio St.3d 729; *Greene v. Brigano* (CA6, 1997), 123 F.3d 917, 921. In addition, the trial court not only provided appellant with copies of the books he requested from the library, but ordered his standby counsel to assist appellant in any legal research.

Doc.7-21, p. 3.

As the Ohio appellate court accurately noted, the Sixth Circuit has held that "by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library." *United States v. Smith*, 907 F.2d 42, 45 (6th Cir. 1990). And there is no controlling Supreme Court precedent mandating that a defendant who chooses to waive his

constitutional right to counsel be afforded access to a law library. Thus, the state court's decision to deny relief to petitioner was not contrary to, or an unreasonable application of, a decision of the United States Supreme Court. In fact, the Supreme Court itself has noted that habeas relief is improper for a claim of lack of access to a law library because, despite a split in the circuit courts on the issue, the Supreme Court has not issued a definitive ruling. *See Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005).[6] Accordingly, petitioner is not entitled to habeas relief.

### D. Claim Three: Denial of Due Process Right to Discovery

Petitioner next claims that he was denied his due process right to discovery. According to petitioner, 2,514 phone calls occurred between petitioner and the victim and petitioner's co-defendant while petitioner was incarcerated. When petitioner's then-attorney asked for discovery, the prosecution "'cherry picked' 32 phone recordings that they thought would support the trumped up charges." Doc. 1, p. 16. Later, petitioner's standby counsel brought 3 compact discs and one VHS tape to the jail where petitioner was incarcerated, and jail staff logged the

---

[6]The Court held in *Kane* that:
> A necessary condition for federal habeas relief here is that the state court's decision be "contrary to, or involv[e] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Neither the opinion below, nor any of the appellate cases it relies on, identifies a source in our case law for the law library access right other than *Faretta*.
> The federal appellate courts have split on whether *Faretta*, which establishes a Sixth Amendment right to self-representation, implies a right of the pro se defendant to have access to a law library. That question cannot be resolved here, however, as it is clear that *Faretta* says nothing about any specific legal aid that the State owes a pro se criminal defendant. The . . . court below therefore erred in holding, based on *Faretta*, that a violation of a law library access right is a basis for federal habeas relief.

*Id.* at 10 (internal citations omitted).

items in as petitioner's property but petitioner purportedly did not see the items again. Petitioner filed a motion seeking to compel the prosecution to turn over all 2,514 phone recordings. Petitioner contends that the trial court instructed the prosecution and jail staff to make arrangements for petitioner to be able to access the materials. *Id.* at p. 16-17. But petitioner asserts that the trial court did not rule on his motion to compel production of all of the 2,514 taped conversations and that, at trial, the trial court overruled his (petitioner's) objections to the prosecution's introduction of the recordings into evidence.

> The Twelfth District Court of Appeals denied petitioner relief, holding that:
>
> Appellant's third assignment of error is overruled, as the trial court did not abuse its discretion in overruling appellant's motion to compel discovery of many hours of digitally recorded jail conversations of appellant. *State v. Murphy*, Clinton App. No. CA2006-02-005, 2007-0hio-2068. At trial, the court determined that the state complied with appellant's discovery requests by providing a copy of the CD to appellant or his attorney. Furthermore, appellant has failed to show that the evidence was favorable and material and how it would have affected the outcome of the proceeding had it been disclosed. *State v. Branham* (June 1, 1998), Butler App. No. CA96-11-247; *United States v. Bagley* (1985), 473 U.S. 667.

Doc. 7-21, p. 3-4.

The prosecution is required to disclose evidence favorable to an accused, whether the evidence is impeachment evidence or exculpatory evidence, if the evidence is material to either guilt or punishment.[7] *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense,

---

[7]Some of the tapes were actually disclosed to petitioner. However, providing an incarcerated, pro se petitioner with tapes without providing him with a means to view or listen to the tapes is the functional equivalent to failing to provide the tapes at all.

14

the result of the proceeding would have been different.'" *Id.* (quoting *Bagley*, 473 U.S. at 682). There are three components of a so-called *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82.

On habeas review of an alleged *Brady* violation, a petitioner must demonstrate "that there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Id.* at 289 (quotation marks omitted). In other words, a habeas petitioner must show that "there is a reasonable probability that his conviction or sentence would have been different had these materials been disclosed." *Id.* at 296.

As respondent points out, petitioner has not met that burden. Even if the Court assumes, solely for purposes of argument, that the tapes in question should have been disclosed under *Brady* and its progeny, petitioner has not at all shown how the tapes would have affected either the verdict or his sentence. Similarly, petitioner has not shown that the state court's decision to deny him relief as to the tapes which were actually played at trial was contrary to, or an unreasonable application of, Supreme Court precedent. Thus, petitioner is not entitled to relief.

### E. Claim four: Petitioner's Sentence

Petitioner's fourth claim is that his sentence "is contrary to law, it violates [both the] state and federal constitution as well as the Ohio Revised Code." Doc. 1, p. 19. Although petitioner's 2254 petition is not a model of clarity on this point, I construe his claim to be that the trial court erred by relying upon a 1988 report from a psychologist to conclude that petitioner was

dangerous and, thus, deserved to receive the maximum possible sentence.[8]

Respondent contends that petitioner failed to fairly present his federal constitution-based claim to the Ohio state courts. Respondent's contention is correct. Examination of petitioner's brief on direct appeal discloses that petitioner did not invoke the federal constitution (or a decision of the United States Supreme Court) in the section arguing that his sentence was improper. *See* Doc. 7-19, p. 19-27. Instead, petitioner's arguments focused entirely upon Ohio state law. Likewise, the Twelfth District Court of Appeals focused entirely upon state law when it denied petitioner relief on his sentencing-related arguments.[9]

"Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). In order to determine if a claim was fairly presented to state courts, a court should consider whether:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Id.* By failing to raise a federal constitutional question and failing to cite relevant federal cases

---

[8]Any argument that petitioner's sentence violates some unspecified Ohio statute is not properly cognizable in this federal habeas proceeding.

[9]*See* Doc. 7-21, p. 4 ("In its judgment of conviction entries, the court clearly considered the purposes and principles of sentencing pursuant to RC. 2929.11, the seriousness and recidivism factors pursuant to RC. 2929.12, and whether appellant was amenable to community control pursuant to RC. 2929.13 prior to sentencing appellant. *See State v. King* (1994), 70 Ohio St.3d 158,163; *State v. Moore*, Butler App. No. CA2007-03-060. 2008-Ohio-1477. Appellant failed to offer clear and convincing evidence that the record does not support the trial court's findings or that appellant's sentence is contrary to law.").

or law, it is clear that petitioner failed to present fairly his sentencing arguments to the Ohio state courts. Likewise, the Ohio state courts did base their decisions on federal law. Accordingly, petitioner is not entitled to federal habeas relief.

### F. Claims Five through Seven: Procedural Default

Ground five accuses the trial court of participating in a plea bargain. Ground six alleges witness misconduct. Ground seven alleges that the trial court erred by failing to instruct on a lesser included offense. Each of these grounds has already been found by this Court to have been procedurally defaulted. *See* Doc. 13, p. 4 (R&R finding that grounds five, six and seven were procedurally defaulted because they were not raised timely in state court); Doc. 25 (order of presiding district judge adopting R&R).

The question thus becomes whether petitioner has shown "cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default . . . ." *Seymour*, 224 F.3d at 549-50. To demonstrate a fundamental miscarriage of justice, a petitioner must show that he is actually innocent. *See, e.g., Jamison v. Collins*, 100 F.Supp.2d 647, 670 (S.D. Ohio 2000); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (holding that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). Petitioner's 2254 petition cannot reasonably be construed as containing an argument–much less a showing– that he is actually innocent.

Since petitioner has not shown that enforcing the procedural default will result in a miscarriage of justice, he must show both cause for the default and prejudice resulting from it. *See id.* (explaining that cause and prejudice test is "conjunctive" not disjunctive). Petitioner has

17

shown neither cause nor prejudice.

Petitioner has not shown cause because he has not shown that a factor external to his defense prevented him from complying with the state procedural rules. *Murray*, 477 U.S. at 488 ("we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). And finding that petitioner has not shown good cause for the procedural default is consistent with Judge Hogan's conclusion in his R&R that a stay was inappropriate because petitioner had not shown good cause for granting a stay. Doc. 13, p. 6 ("Petitioner offers no other reasons to establish good cause for a stay of these habeas corpus proceedings.").

Although his failure to show cause for the procedural default is fatal to his claim, I also briefly note that petitioner has also not shown prejudice. A petitioner shows prejudice by showing that an error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In order to demonstrate prejudice, therefore, a petitioner must show a reasonable probability that the outcome of his trial would have been different. *See, e.g., Wright v. Lazaroff*, 643 F.Supp.2d 971, 988 (S.D. Ohio 2009) (citing *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003)). Petitioner has not shown how the outcome of his trial would have been different. Thus, he has not shown prejudice.

### III. Conclusion

For the foregoing reasons, it is **RECOMMENDED THAT:**

1. Petitioner's 28 U.S.C. § 2254 petition should be **denied**; and

18

2. A certificate of appealability should not issue with respect to any claim alleged in the petition, because no claim for relief states a "viable claim of the denial of a constitutional right" or presents issues that are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); and

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* from any Order adopting the undersigned's Report and Recommendation to deny habeas corpus relief on claims alleged in the petition, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of such Order would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

This the 9th day of March, 2011.

s/ J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**AT CINCINNATI**
**CIVIL CASE NO. 09-335-SSB-JGW**

**LONNIE RARDEN**                                                      **PETITIONER,**

**V.**

**WARDEN, WARREN CORRECTIONAL**
**INSTITUTION**                                                   **RESPONDENT.**

**NOTICE**

      Attached hereto is the Report and Recommendation Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).