IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lonnie Rarden,                  )
                                )
          Petitioner,           ) Case No. 1:09-CV-335
                                )
     vs.                        )
                                )
Warden, Warren Correctional     )
Institution,                    )
                                )
          Respondent.           )

O R D E R

This matter is before the Court on Petitioner Lonnie Rarden's petition for a writ of habeas corpus (Doc. No. 1), Magistrate Judge Wehrman's Report and Recommendation of March 9, 2011 (Doc. No. 27) recommending that Petitioner's petition be denied, and Petitioner's objections to the Report and Recommendation (Doc. No. 30).  For the reasons that follow, Petitioner's objections are not well-taken and are **OVERRULED**; the Court **ADOPTS** the Report and Recommendation; Petitioner's petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

I. Background

In August and September of 2006, the Butler County grand jury returned indictments charging Petitioner with escape, retaliation, two counts of complicity to perjury, complicity to tampering with evidence, menacing by stalking, and seventeen counts of violating a protection order.  The evidence presented

1

by the prosecution at trial showed that while he was in the Butler County jail awaiting sentencing on separate charges of menacing by stalking and domestic violence, Petitioner devised a scheme to escape involving an accomplice, his co-defendant Christy Hurst, mailing to him a makeshift screwdriver that was to be secreted in the spine of a law book.  The escape attempt failed, however, when Hurst informed deputies at the jail of Petitioner's plan.  Instead of an escape tool, detectives made a controlled delivery of a law book with an envelope full of pink fingerprint powder that apparently burst open when Petitioner removed it from the spine.

   The evidence also showed that Petitioner devised, and with Hurst's assistance executed, a plan to retaliate against his former girlfriend, Emily Anderson, for his forementioned menacing and domestic violence convictions.  Hurst took Anderson bar-hopping and got her intoxicated on alcohol and Klonopin.  When Anderson passed out at her apartment, Hurst cut herself with a knife and then placed the knife in Anderson's hand.  Hurst then called the police and claimed that Anderson assaulted her with the knife.  Anderson was arrested and charged with felonious assault.  Later, Hurst appeared in court and falsely swore out a complaint for a protection order against Anderson.  Also at Petitioner's behest, Hurst removed from Anderson's apartment incriminating letters that Petitioner had sent her.  Finally, the

prosecution presented a number of letters and audio tapes in which Petitioner made threatening statements to Anderson.

The trial judge ordered that Petitioner be evaluated to determine whether he was competent to stand trial. The reviewing psychologist concluded that while Petitioner has a personality disorder, not otherwise specified, with narcissistic, borderline, and antisocial traits, he was nonetheless competent to stand trial because he understood the nature of the proceedings and was capable of assisting counsel in his defense.

Although Petitioner initially received court-appointed counsel, about a month before the trial was scheduled to begin, he moved the court to proceed pro se. The trial judge held a hearing on Petitioner's motion and cautioned him about the perils of self-representation. Petitioner nevertheless elected to waive counsel and represent himself. The trial judge thus granted Petitioner's motion but retained Petitioner's appointed attorney as stand-by counsel.

Finally, as is relevant here, Petitioner moved the trial court for an order requiring him to be transported to a law library so he could prepare his defense. The trial judge ruled, however, that having elected to represent himself, Petitioner had no constitutional right of access to a law library. Additionally, prior to trial, the prosecution disclosed to Petitioner several compact discs with recordings of telephone

3

calls he made from the jail and a VHS tape of the controlled delivery of the law book.  Petitioner, however, complained to the trial court that he did not have the equipment necessary to review this evidence.  There was some discussion among the trial judge, Petitioner, and the prosecutor about making such equipment available to Petitioner at the jail but apparently these plans never came to fruition.  Additionally, although the prosecution disclosed some 30 audio recordings to Petitioner, he claimed that he made over 2,500 calls from jail and moved for the production of the recordings of all of those conversations.  Petitioner claims, however, that the trial court never ruled on this motion and that he never did receive this evidence from the prosecution.

As might be expected, Petitioner's defense did not go well – the jury convicted him on all 23 counts of the indictment.  The trial judge sentenced Petitioner to a total term of 26½ years of imprisonment.

Petitioner's direct appeal raised four assignments of error: 1) the trial court violated his right to counsel by not substantially complying with Ohio R. Crim. P. 44(c) ("Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22.  In addition, in serious offense cases the waiver shall be in writing."); 2) the trial court violated his constitutional right of access to a law library; 3) the trial court violated his right to due process by not making available the means with which to listen to the audio recordings

and by refusing to order the prosecution to disclose all of the recordings as exculpatory evidence; and 4) his sentence was contrary to law.  Doc. No. 7-3, at 1-4.

The Ohio Court of Appeals rejected each of Petitioner's assignments of error and affirmed his convictions and sentence. The appeals court ruled that: 1) the trial court substantially complied with Rule 44(c) and had made a sufficient inquiry into whether Petitioner made a knowing and intelligent waiver of counsel; 2) Petitioner had no constitutional right of access to a law library once he decided to represent himself; 3) the trial court did not abuse its discretion by failing to order the disclosure of all of the digitally recorded jail conversations and that in any event Petitioner failed to show that this evidence was material to his defense; and 4) his sentence was not contrary to law.  Doc. No. 7-6, at 1-4.  The Supreme Court of Ohio denied Petitioner's appeal from that judgment as not involving any substantial constitutional question.

Thereafter, Petitioner filed a number of other motions and appeals which Judge Wehrman fully described in his Report and Recommendation. Doc. No. 27, at 2-4.  It is not apparent whether Petitioner ever properly initiated state post-conviction relief proceedings, but, in any event, in May 2009, he filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner raised seven assignments of error in his application: 1) the trial court violated his right to counsel; 2)

5

the trial court denied his right of access to a law library; 3) the trial court denied his due process right to discovery; 4) the sentence imposed by the trial court was contrary to state and federal law; 5) the trial court improperly participated in plea bargaining; 6) witness misconduct deprived him of a fair trial; and 7) the trial court erred by failing to instruct the jury on lesser included offenses.

In his Report and Recommendation, Judge Wehrman concluded that Petitioner's first four assignments of error are without merit, that he procedurally defaulted his last three assignments of error, and that there are no grounds upon which to excuse the default.  With respect to the merits of Petitioner's undefaulted claims, Judge Wehrman concluded that the Ohio court of appeals had not unreasonably applied Supreme Court authority in rejecting Petitioner's denial of counsel claim.  Judge Wehrman also concluded that there is no controlling Supreme Court precedent mandating that a pro se defendant be afforded access to a law library.  Indeed, Judge Wehrman cited a decision in which the Supreme Court observed that it had never decided whether a pro se defendant has a constitutional right of access to a law library.  Doc. No. 27, at 13 (citing Kane v. Garcia Espita, 546 U.S. 9, 10 (2005)).  Judge Wehrman expressed some concern that the state failed to provide Petitioner with the means to listen to the audio recordings, but nevertheless concluded that to the

6

extent the prosecution failed to produce all of the digital recordings, Petitioner failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different.  Finally, Judge Wehrman concluded that Petitioner failed to fairly present a federal constitutional basis for his claim that his sentence was contrary to law.  Therefore, Judge Wehrman determined that the Court lacks jurisdiction to consider that claim.  Judge Wehrman, therefore, recommended that Petitioner's habeas petition be denied.  Judge Wehrman also recommended that the Court decline to issue a certificate of appealability and that the Court deny Petitioner leave to appeal in forma pauperis.

Petitioner filed timely objections to some aspects of Judge Wehrman's Report and Recommendation.  Notably, Petitioner did not object to Judge Wehrman's conclusion that the Court lacks jurisdiction to consider his fourth ground for relief or Judge Wehrman's conclusion that Petitioner procedurally defaulted his fifth, sixth and seventh grounds for relief.  This Court reviews de novo those portions of the Report and Recommendation to which Petitioner filed timely objections.  Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

In his objections, Petitioner argues with respect to

7

his first claim that both the trial court and Judge Wehrman erred in focusing on whether he was competent to stand trial.  Rather, Petitioner argues, the trial court should have made a further determination whether he was competent to represent himself.  Petitioner argues that Judge Wehrman misinterpreted his access to a law library claim.  Petitioner states that this claim relates only to the period when he was represented by court-appointed counsel.  Finally, Petitioner objects to Magistrate Judge Wehrman's resolution of his due process claim.  Petitioner contends that the trial court never ruled on his discovery motion, and, had he been given the additional audio recordings they would have shown that he was trying to warn Anderson about Hurst's plot to frame her.

## II. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, the district court shall not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court opinion violates the "unreasonable application" clause of § 2254 when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state-court opinion will also involve the "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." Seymour v. Walker, 224 F.3d 542, 549 (6th Cir. 2000). The Supreme Court stated that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. In defining the meaning of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

### III. Analysis

Petitioner's objections are not well-taken and he, therefore, is not entitled to relief on any of the claims raised in his habeas petition.

### A. Denial of Right to Trial Counsel

9

The Ohio Court of Appeals ruled that Petitioner validly waived his right to counsel and made a knowing, voluntary, and intelligent decision to represent himself. Petitioner contends, however, that even though the trial court determined that he was competent to stand trial, it should have gone further and determined whether he was competent to represent himself. There is no clearly established Supreme Court precedent which requires the trial court to determine whether a defendant who is competent to stand trial is also competent to represent himself in deciding whether to grant a motion to waive counsel. While the trial court has discretion to engage in that inquiry and ultimately to deny a defendant the right to defend himself, <u>Indiana v. Edwards</u>, 554 U.S. 164, 174-78 (2008), the only clearly established precedent is that a defendant who is competent to stand trial is also competent to waive counsel and, if he meets that standard, whether he is further competent to represent himself is immaterial. <u>Godinez v. Moran</u>, 509 U.S. 389, 399 (1993)("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to <u>waive the right</u>, not the competence to represent himself.") (emphasis in original).

Accordingly, this objection is overruled.

### B. <u>Access to a Law Library</u>

The Ohio Court of Appeals ruled that once he decided to represent himself, Petitioner had no constitutional right of

access to a law library.  Petitioner, however, contends that this claim has been misinterpreted and relates only to the period when he was represented by court-appointed counsel.  Again, the Ohio Court of Appeals did not misapply clearly established precedent in resolving this claim.

First, to the extent that Petitioner contends that he was denied his constitutional right of access to a law library when he was represented by counsel, he has procedurally defaulted that claim by failing to raise it before the state courts.  See Doc. No. 7-3, at 14 (Petitioner's brief on direct appeal) ("Appellant only waived his right to counsel - he did not waive his right to access the courts and the available research facilities.").  In any event, even if Petitioner had not procedurally defaulted this claim, any right to access the law library would have been adequately protected by his appointed counsel.  Holt v. Pitts, 702 F.2d 639, 640 (6th Cir. 1983).

Second, as Judge Wehrman correctly observed, there was no clearly established precedent that required the State of Ohio to provide Petitioner with law library access once he decided to represent himself.  Kane v. Garcia Espita, 546 U.S. 9, 10 (2005); see also United States v. Smith, 907 F.2d 42, 45 (6th Cir. 1990) ("We find that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library.").  The Ohio Court of Appeals, therefore, did not

11

unreasonably resolve this claim.

Accordingly, this objection is overruled.

### C. Discovery/Due Process Violation

Petitioner finally claims that the trial court erred by failing to rule on his discovery motion and that his right to due process was violated when the prosecution failed to disclose exculpatory evidence in the form of the some 2,500 digitally recorded telephone conversations.

It is certainly well-established that the prosecution has duty to disclose exculpatory and impeachment evidence to a criminal defendant. Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154 (1972). Nevertheless, the rule established by Brady is not a discovery device; the prosecution at its peril retains the sole discretion to disclose exculpatory evidence and impeachment evidence to the defendant. Weatherford v. Bursey, 429 U.S. 545, 559 (1977)("There is no general constitutional right to discovery in a criminal case, and Brady did not create one[.]"); United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988). Therefore, to the extent that Petitioner bases this claim on the trial court's alleged failure to rule on his discovery motion, he fails to state a claim for federal habeas relief.

Otherwise, a Brady violation claim has three elements: (1) "the evidence at issue must be favorable to the accused,

12

either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." Bell v. Bell, 512 F.3d 223, 240 (6th Cir. 2008) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). "Prejudice" means that there is a reasonable probability that the outcome of trial would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id. Both Judge Wehrman and the Ohio Court of Appeals ruled that Petitioner's Brady claim foundered on the first and third elements - he failed to show that the alleged suppressed evidence was favorable to his defense and that there is a reasonable likelihood that the result of the trial would have been different.

Assuming without deciding that there was some exculpatory evidence buried somewhere within the 2,500 recordings that Petitioner claims the prosecution failed to disclose, the Court agrees with both Judge Wehrman and the Ohio Court of Appeals that the outcome of the Petitioner's trial likely would not have been different.[1] In reaching this conclusion, the Court

---

[1] In fact, it is more likely than not that these phone calls contained no exculpatory evidence. The investigating officer testified that of the almost 1,500 calls that Petitioner made to Anderson, most were refused, not connected, or were otherwise of short duration. Trial transcript at 308-09 (Doc.

13

recognizes that the inquiry is whether the non-disclosed evidence, considered collectively, "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 434-35 (1995).

As stated, Petitioner's theory is that the undisclosed recordings would have shown that he was trying to warn Anderson that Hurst was going to try frame her for assault.  This theory, however, likely would not have swayed the jury in Petitioner's favor.  First, the mere fact that Petitioner called Anderson almost 1,500 times in the span of a few months likely would have only reinforced the conclusion that he was stalking and harassing her.  Second, Petitioner never offered the jury any credible evidence that Hurst had some independent motive to frame Anderson on criminal charges.  Third, Petitioner was able to present the essence of the evidence he claims was on the suppressed recordings when on cross-examination he elicited from Anderson that he would always "try to warn you when stuff was about to happen to you."  Trial Transcript at 248 (Doc. No. 12-3, at 250).  The jury nevertheless obviously credited Anderson's overall testimony that Petitioner constantly harassed and threatened her with letters and phone calls.  Fourth, Petitioner undermined his

---

No. 12-3, at 311-12).  Thus, Petitioner's contention that the recordings would have shown that he tried to warn Anderson about Hurst is weak at best.

own case by arguing to the jury that Anderson could have avoided being menaced by him if she would have only thrown away his letters and hung up the phone when he called. Trial Transcript at 97 (Doc. No. 12-3, at 98). He also improvidently argued to the jury that he would not have been charged with escape if only the jail would have followed its policies and procedures. Trial Transcript at 99 (Doc. No. 12-3, at 100). Moreover, Petitioner's inept cross-examination of Anderson and Hurst likely only served to bolster the prosecution's case against him. See, e.g., Trial Transcript at 275 (Doc. No. 12-3, at 277)(Petitioner's cross-examination of Anderson ("Q. . . . Did it frighten you when I was talking about getting guns and getting acid and throwing it in your face and all that? A. Yes."). On the other hand, the trial transcript demonstrates that the prosecution's evidence against Petitioner was overwhelming. The outcome of the trial would not have been different had all of the recordings been disclosed to Petitioner.

   Accordingly, this objection is overruled.

## Conclusion

   For the foregoing reasons, Petitioner's objections to Magistrate Judge Wehrman's Report and Recommendation are not well-taken and are **OVERRULED.** The Court **ADOPTS** the Report and

15

Recommendation. Petitioner's application for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

A certificate of appealability will not issue with respect to this order because under the first prong of the applicable two-part standard established in Slack v. McDaniel, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings. Additionally, Petitioner has failed to make a substantial showing of the denial of a constitutional right because reasonable jurists could not debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." Id. at 483-84. Petitioner remains free to request issuance of the certificate of appealability from the Court of Appeals. See 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

With respect to any application by Petitioner to proceed on appeal in forma pauperis, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this order would not be taken in good faith. Therefore, Petitioner is **DENIED** leave to appeal in forma pauperis. See Fed. R. App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO ORDERED**

Date June 7, 2011                              s/Sandra S. Beckwith
                                             Sandra S. Beckwith
                                     Senior United States District Judge

17